IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD ROE,

                Plaintiff,

      v.

CITY OF PORTLAND, AMELIA FLOHR,
JOHN DOES I-V,

                Defendants.

Case No. 3:22-cv-01193-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Richard Roe ("Roe") filed this action against the City of Portland ("City"),

Amelia Flohr ("Flohr"), and John Does I through V ("Doe Defendants") (together,

"Defendants"), alleging constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983").

Now before the Court is Defendants' motion for judgment on the pleadings. (ECF No. 48.)

        The Court has jurisdiction over Roe's claims pursuant to 28 U.S.C. § 1331, and all parties

have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.[1] For the

---

[1] Placeholder Doe Defendants are not "parties" for the purpose of evaluating whether
there is full consent to magistrate judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-
505 (9th Cir. 2017) (holding that magistrate judge jurisdiction vests after all named parties,
whether served or unserved, consent); *Geppert v. Doe 1*, No. 23-cv-03257-SVK, 2023 WL

reasons explained below, the Court grants in part and denies in part Defendants' motion for judgment on the pleadings.

## BACKGROUND

Roe's claims arise out of interactions with Portland Police Bureau ("PPB") officers following two protests in August 2020. (*See* Am. Compl. ¶¶ 8, 11, ECF No. 3.)

Roe alleges that on August 9, 2020, he was marching in a peaceful protest in northeast Portland. (*Id.* ¶ 8.) Roe alleges that officers directed protesters to disperse. (*Id.*) Complying with the order, Roe moved in the direction that the officers directed. (*Id.*) In response, the officers "repeatedly struck [Roe] from behind with a nightstick, deployed flashbangs [at] his feet, and fired so-called 'non-lethal' munitions at [Roe]." (*Id.*) John Doe IV hit Roe approximately three times with projectiles. (*Id.*)

Next, officers "engaged in a tactical maneuver, commonly known as 'kettling,' by surrounding protesters from three sides and rapidly charging." (*Id.* ¶ 9.) While running, John Doe V body-checked Roe with a nightstick from behind. (*Id.*) Roe "fl[ew] forward with both feet lifted off the ground[.]" (*Id.*) Roe suffered injuries. (*Id.* ¶ 10.) Officers "made no attempt to arrest, restrain, or detain" him. (*Id.*)

On August 14, 2020, Roe alleges that he was again marching in a peaceful protest in northeast Portland. (*Id.* ¶ 11.) Officers "fired flashbang grenades which directed the protesters to a blockade of PPB officers." (*Id.*) Because officers blocked their path, the group remained in place. (*Id.*) Roe was playing drums. (*Id.*) Roe alleges that the officers attacked the group:

---

5804156, at *1 n.2 (N.D. Cal. Sept. 7, 2023) (explaining that unnamed Doe defendants need not consent for full magistrate judge jurisdiction) (citations omitted); *Monical v. Jackson Cnty. Sheriff's Dep't*, No. 1:17-cv-00476-YY, 2020 WL 571734, at *1 n.1 (D. Or. Feb. 5, 2020) (explaining that *Williams* does not require the consent of unnamed Doe defendants and collecting cases).

> After an interval, the police shot smoke grenades at the feet of the
> front line of protesters and then into the midst of the group of
> protesters. Then the Portland Police officers ran at full speed into
> the group of protesters, knocking people to the ground, swinging
> their nightsticks at protesters and body checking protesters with
> their nightsticks. [Roe] was struck by Flohr and pulled to the
> ground by his face mask/respirator.

(*Id.*) Multiple other officers jumped on Roe, including John Does I, II, and III, striking him with their batons. (*Id.*) "A male officer asked whether they were going to arrest him, but Flohr stated they were going to beat him where he was." (*Id.*) Roe attempted to flee but was "violently grabbed, beaten, punched and thrown to the ground by John Does I-III." (*Id.*) Roe suffered injuries to his wrists, arms, legs, and torso. (*Id.* ¶ 12.)

Officers then arrested Roe. (*Id.* ¶ 11.) Roe was charged with Assaulting a Public Safety Officer, Interfering with Peace/Parole and Probation Officer, Disorderly Conduct in the Second Degree, and Resisting Arrest. (*Id.* ¶ 12.) Roe alleges that the charges were based on Flohr's false police report and statements, which she knew to be false at the time. (*Id.*) Roe alleged that the district attorney subsequently dismissed the charges. (*Id.* ¶ 13.)

On August 12, 2022, Roe filed the instant case against the City, Ariel Livingston, and three Doe Defendants. (*See* Compl., ECF No. 1.) On September 1, 2022, Roe filed an amended complaint against the City, Flohr,[2] and five Doe Defendants. (*See* Am. Compl.) Roe alleges one claim of excessive force under the Fourth Amendment against Flohr and the Doe Defendants, one claim of retaliation under the First Amendment against Flohr and the Doe Defendants, and one claim of Section 1983 malicious prosecution against Flohr. (*Id.* at 4-9.)

///

---

[2] Roe replaced the allegations against Ariel Livingston with allegations against Flohr, and thus Defendants' arguments about the Doe Defendants do not apply to Flohr.

Roe also brings a *Monell* claim against the City. (*Id.* at 6-7.) Roe alleges that Flohr and the Doe Defendants "acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the City to allow officers to use disproportional force against peaceful protesters." (*Id.* ¶ 27.) Further, Roe alleges that the City "failed to adequately supervise or train its employees with respect to the Fourth Amendment rights of peaceful protesters such as [Roe]" through "the City's failure to investigate and discipline officers for Fourth Amendment violations," amounting to deliberate indifference to Roe's rights. (*Id.* ¶ 28.) Roe alleges that Mayor Ted Wheeler oversaw the PPB, had final policy making authority for the City, and failed to act in light of the "routine use of excessive force[.]" (*Id.* ¶ 29.) As a result, PPB officers "unlawfully used force" against Roe and caused him bodily harm, physical pain, and emotional distress. (*Id.* ¶¶ 30-31.)

## LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (quoting *Dunlap v. Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam)). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (simplified); *see also Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that "[t]he principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing" and the motions are "functionally identical"). In other words, as with a Rule 12(b)(6) motion, when evaluating a motion for

judgment on the pleadings, "a court must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Chavez*, 683 F.3d at 1108 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (simplified).

## DISCUSSION

Defendants move for dismissal of (1) Roe's claims arising from events on August 9, 2020, based on the statute of limitations and the timing of Roe's filing of his original complaint; (2) all claims against the Doe Defendants based on the statute of limitations and the relation back doctrine; (3) Roe's Fourth Amendment excessive force claim against the City because Roe has failed to state a *Monell* claim; (4) Roe's malicious prosecution claim for failure to state a claim; and (5) Roe's First Amendment retaliation claim for failure to state a claim. (*See* Defs.' Mot. J. Pleadings ("Defs.' Mot.") at 1, ECF No. 48.) Defendants do not move for dismissal of Roe's excessive force claim against Flohr based on the events of August 14, 2020. (*See generally id.*)

## I.    STATUTE OF LIMITATIONS

Defendants argue that the Court should dismiss (1) Roe's claims arising from the events on August 9, 2020, based on the applicable statute of limitations, and (2) his claims against the Doe Defendants—arising from the August 14, 2020, events—due to Roe's failure to substitute the Doe Defendants with named defendants within the two year statute of limitations. (*Id.* at 5-6.)

### A.    Applicable Law

When evaluating the applicable statute of limitations for claims arising under Section 1983, courts are subject to the forum state's statute of limitations applicable to personal injury claims. *See Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 951 (9th Cir. 2022) (citing *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam)). In Oregon, the applicable statute of limitations is two years from the date upon which the cause of action accrues. *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009); *see also* OR. REV. STAT.

§ 12.110(1) ("An action . . . for any injury for the person or rights of another, not arising on contract, and not specifically enumerated in this chapter, shall be commenced within two years[.]").

"Although 'state law determines the length of the limitations period, federal law determines when a civil rights claim accrues.'" *Bonelli*, 28 F.4th at 952 (quoting *Bird*, 935 F.3d at 743). Under federal law, a claim "accrues" as soon as a plaintiff is either aware or should be aware of the existence and source of the injury. *See Lee v. United States*, 809 F.2d 1406, 1410 (9th Cir. 1987).

### B.    August 9, 2020 Claims

Defendants assert that Roe's claims arising on August 9, 2020, the date of Roe's alleged injury, are barred by the two-year statute of limitations. (Defs.' Mot. at 5.) Roe responds that his claim did not accrue on the date he was injured because he was not yet aware of the identity of the source of his injury, or alternatively that the discovery rule tolled the running of the statute of limitations. (Pl.'s Resp. Defs.' Mot. ("Pl.'s Resp.") at 7-9, ECF No. 56.) The Court concludes that Roe's claims arising from the August 9, 2020, events accrued on August 9, 2020, and are barred by the two-year statute of limitations.

Roe cites *United States v. Kubrick* in support of his accrual argument. *See United States v. Kubrick*, 444 U.S. 111 (1979). In *Kubrick*, the Supreme Court considered when a claim accrues for the purposes of the Federal Tort Claims Act. *See id.* at 113. The Supreme Court concluded that a claim accrues, and the statute of limitations begins to run, when a plaintiff knows the existence and cause of his injury. *See id.* at 113, 122. The Supreme Court determined that a plaintiff need not know that the act inflicting the injury may constitute a legal wrong such as medical malpractice. *See id.* at 122. In so concluding, the Supreme Court noted that once a

plaintiff knows of the fact of his injury and its cause, the plaintiff will be "in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.*

Following *Kubrick*, the Ninth Circuit concluded that a plaintiff need not know the identity of the source of the injury to trigger the statute of limitations. *See Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (concluding that the plaintiff's federal tort claim accrued on the date the plaintiff learned of the injury). In *Gibson*, the Ninth Circuit rejected the plaintiff's reliance on *Kubrick* dictum to argue that the plaintiff's claim did not accrue until the plaintiff discovered the identity of who caused the injury. *Id.* (explaining that "the incident alone immediately alerted [plaintiffs] to the fact of their injury" and that the new information merely "allegedly identified the culprit"); *see also Blomdahl v. Jones*, No. 20-cv-01207-PHX-MTL-DMF, 2020 WL 4698468, at *6 (D. Ariz. Aug. 13, 2020) ("Plaintiff's excessive force claim accrued on June 28, 2017, and is untimely. Even though Plaintiff may not have known Defendant Alger's 'true identity' until April 16, 2020, a plaintiff need not know who caused the injury for the action to accrue." (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374 (9th Cir. 1998))); *Goodson v. Tucson Police Dep't*, No. 16-cv-00645-TUC-RCC, 2017 WL 10636454, at *4 (D. Ariz. Jan. 27, 2017) (explaining that for Section 1983 claims, "[a] plaintiff need not know who caused the injury for the action to accrue" and collecting cases); *Clavette v. Sweeney*, 132 F. Supp. 2d 864, 874 (D. Or. 2001) (explaining that *Kubrick*'s reference to "who has inflicted the injury" was dictum); *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1129 n.9 (N.D. Cal. 2002) (explaining that "[a]llowing [the plaintiff's] construction would extend *Kubrick* in a manner previously rejected by the Ninth Circuit" (citing *Gibson*, 781 F.2d at 1344)).

In Roe's amended complaint, he alleges that he was injured on August 9, 2020, when he was "repeatedly struck . . . from behind with a nightstick," and "hit . . . approximately three

times with projectiles" by PPB officers. (Am. Compl. ¶ 8.) Although Roe was not aware of the

identities of the individual officers involved, his claim accrued because he was aware that (1) he

was injured, and (2) PPB officers were the source of his injuries. (*Id.*); *see also Dyniewicz v.*

*United States*, 742 F.2d 484, 487 (9th Cir. 1984) (concluding that the plaintiff's cause of action

accrued once he knew "both the fact of injury and its immediate physical cause," and that the

plaintiff's "ignorance of the involvement of United States employees [was] irrelevant") (citations

omitted). Roe filed his initial complaint on August 12, 2022 (*see* Compl.), and his amended

complaint on September 1, 2022 (*see generally* Am. Compl.), both after the applicable two-year

statute of limitations had expired.[3]

In sum, because Roe was aware of the existence and source of his injuries and failed to

file his initial complaint until the two-year statute of limitations had expired, the Court dismisses

with prejudice all claims arising from the events on August 9, 2020.[4] *See Wilson v. Or. by &*

*through Dep't of Corr.*, No. 3:20-cv-2078-SI, 2021 WL 3779630, at *4-5 (D. Or. Aug. 25, 2021)

(concluding that the plaintiff's federal claim was time-barred because she filed her complaint six

months after the two-year statute of limitations had expired).

### C.    August 14, 2020 Claims

On August 14, 2020, Roe became aware of the existence and source of his injuries arising

from the events of the day and timely filed his related claims within the two-year statute of

limitations period. (*See generally* Compl.) Unaware of the identities of the PPB officers involved

in the August 14, 2020, event, Roe filed his complaint using "John Doe" placeholders. (*See*

---

[3] Although Roe mentions tolling, he does not identify a basis for tolling beyond referring
to the discovery accrual rule.

[4] Roe's only allegations against John Does IV and V arise from the August 9, 2020,
events. Accordingly, the Court dismisses all claims against John Does IV and V.

Compl.; Am. Compl.) Because Roe has not yet substituted the Doe Defendants with named defendants, Roe's claims are time-barred unless they "relate back" to his timely-filed original complaint. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010) (explaining that an amended pleading that relates back to a timely filed pleading "is . . . itself timely even though it was filed outside an applicable statute of limitations").

Defendants assert that even if Roe discovered the identities of the Doe Defendants in the course of discovery in the instant case, his claims against them would be barred because he has not served the Doe Defendants within the required timeframe under Rule 4(m), and any newly named parties would not be timely substituted for the Doe Defendants under the relation back doctrine. (Defs.' Mot. at 5-6; Defs.' Reply Defs.' Mot. ("Defs.' Reply") at 6-9, ECF No. 57.) Roe responds that the relation back doctrine is irrelevant because the statute of limitations is tolled. (Pl.'s Resp. at 9.)

### 1.    Applicable Law

Where the length of the statute of limitations arises under state law, as it does here, the Court must consider both federal and state law relation back standards, "employ[ing] whichever affords the 'more permissive' relation back standard." *McKenzie v. Portland Police Div.,* No. 3:22-cv-01140-SB, 2023 WL 10354245, at *2 (D. Or. Sep. 1, 2023) (quoting *Fudge v. Bennett,* No. 2:19-cv-01102-SB, 2021 WL 1414279, at *2 (D. Or. Jan. 5, 2021), *findings and recommendation adopted,* 2021 WL 1414209 (D. Or. Apr. 13, 2021)). Roe bears the burden of establishing that any proposed amendments relate back to his timely-filed complaint. *See Wilkins-Jones v. Cnty. of Alameda*, No. C-08-1485 EMC, 2012 WL 3116025, at *14 (N.D. Cal. July 31, 2012) (noting that "it is [the] Plaintiff's burden to show relation back").

///

///

### a.    The Federal Standard

Defendants argue that Rule 15(c)'s relation back provision does not apply where—as here—a plaintiff seeks to substitute a Doe defendant. (Defs.' Mot. at 5-6.) The Court agrees.

Under Federal Rule of Civil Procedure 15(c), an amendment relates back to the original pleading if:

> (1) the amendment arises out of the same "conduct transaction or occurrence set out" in the original complaint; (2) the defendant brought in by the amendment received notice of the action, within 90 days of the original complaint, such that the defendant "will not be prejudiced in defending on the merits"; and (3) within those 90 days, the new or renamed defendant knew "or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*Manns v. Lincoln Cnty.*, No. 6:17-cv-01120-MK, 2018 WL 7078672, at *3 (D. Or. Dec. 12, 2018) (quoting Fed. R. Civ. P. 15(c)) (footnote omitted), *findings and recommendation adopted*, 2019 WL 267708 (D. Or. Jan. 17, 2019).

"Replacing a 'John Doe' defendant with the actual name of a defendant is not a 'mistake' that allows relation back under Rule 15(c)(1)(C)." *Boss v. City of Mesa*, 746 F. App'x 692, 695 (9th Cir. 2018) (citing *Butler v. Nat'l Cmty. Ren. of Cal.*, 766 F.3d 1191, 1203-04 (9th Cir. 2014)). Following *Boss*, district courts in the Ninth Circuit have consistently recognized that Rule 15(c)'s relation back provision does not apply to the untimely substitution of Doe defendants. *See, e.g.*, *Deal v. Dasch*, No. 6:19-cv-01596-MK, 2023 WL 2707453, at *3 (D. Or. Mar. 30, 2023) (denying the plaintiff's request to substitute a Doe defendant and holding that the plaintiff could not satisfy Rule 15's mistake requirement because "there has been no 'mistake' which would allow relation back" (citing *Boss*, 746 F. App'x at 695)); *Finicum v. United States*, No. 2:18-cv-00160-SU, 2021 WL 3502462, at *9 (D. Or. Aug. 5, 2021) (holding that "the naming of Doe defendants is not a mistake for purposes of [Rule 15]" (citing *Boss*, 746 F. App'x at 695 and *Manns*, 2018 WL 7078672, at *4-5)); *see also Dana v. Tewalt*, No. 1:18-cv-00298-

DCN, 2022 WL 3598311, at *9 (D. Idaho Aug. 23, 2022) ("[T]he Ninth Circuit has expressly

held that 'replacing a 'John Doe' defendant with the actual name of a defendant is not a

'mistake' that allows relation back under Rule 15(c)(1)(C).'" (quoting *Boss*, 746 F. App'x at

695)), *aff'd in relevant part*, *Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581

(9th Cir. June 6, 2024); *Smith v. Shartle*, No. 18-cv-00323-TUC-RCC, 2021 WL 842144, at *4

(D. Ariz. Mar. 5, 2021) ("[T]he Ninth Circuit has determined that simply replacing a John Doe

defendant with the actual name of a defendant is not a mistake that allows relation back under

Rule 15(c)(1)(C).") (simplified).

Accordingly, even if Roe could now discover the identities of the Doe Defendants, it is

too late to amend his complaint pursuant to Rule 15(c). The Court therefore turns to Oregon's

relation back rule.

### b.    The Oregon Standard

Oregon Rule of Civil Procedure ("ORCP") 23C governs relation back under Oregon law:

[Sentence 1] Whenever the claim or defense asserted in the amended pleading
arose out of the conduct, transaction, or occurrence set forth or attempted to be set
forth in the original pleading, the amendment relates back to the date of the
original pleading.

[Sentence 2] An amendment changing the party against whom a claim is asserted
relates back if the foregoing provision is satisfied and, within the period provided
by law for commencing the action against the party to be brought in by
amendment, such party (1) has received such notice of the institution of the action
that the party will not be prejudiced in maintaining any defense on the merits, and
(2) knew or should have known that, but for a mistake concerning the identity of
the proper party, the action would have been brought against the party brought in
by amendment.

OR. R. CIV. P. 23C.

Where the plaintiff seeks leave to amend to substitute the name of a defendant, Oregon

courts have distinguished cases "based on the type of mistake the plaintiff has made: (1) a

mistake in choosing *which* person or entity to sue—a 'misidentification'—or (2) a mistake in

naming that person or entity, that is, an error in stating what the defendant is *called*—a 'misnomer.'" *Worthington v. Estate of Davis*, 282 P.3d 895, 898 (Or. Ct. App. 2012) (holding that ORCP 23C's second requirement, i.e., notice, applies only to misidentified defendants, not misnamed defendants).

In *Lemus v. Potter*, the Oregon Court of Appeals explained the difference between a misidentification and a misnomer. 498 P.3d 1 (Or. Ct. App. 2021). The court explained that Oregon cases discussing misidentification versus misnomer fall on a spectrum: "At one end of the spectrum, the two parties are separate, distinct individuals, and it is readily apparent that substituting one for the other would 'chang[e] the party against whom the claim is asserted.'" *Id.* at 4 (citing *Worthington*, 282 P.3d at 900, concluding that substituting the personal representative for the deceased defendant changed the party, and *Hamilton v. Moon*, 882 P.2d 1134, 1135 (Or. Ct. App. 1994), concluding that substituting the father for the son in an automobile accident case changed the party). "At the other end of the spectrum are cases where the complaint is brought against the correct defendant, but the complaint misspells or misstates the defendant's name in some minor respect." *Id.* (citing, *inter alia*, *Harmon v. Meyer*, 933 P.2d 361, 363-64 (Or. Ct. App. 1997) (substituting "The Interlake Corporation" for "Interlake, Inc."). The Oregon Court of Appeals explained, "[t]he greater the difference between the name set out in the complaint and the correct defendant's name, the more we have looked to other indicia in the complaint and summons to determine whether the complaint, read as a whole, identified the correct defendant." *Id.* (citing *Harmon*, 933 P.2d at 364). The court concluded that "[w]hen the complaint, read as a whole, correctly identifies the defendant but misstates the defendant's name in some nonmaterial way, an amendment to correct that misstatement will not 'chang[e] the party against whom the claim is asserted' and will relate back if it complies with the first condition set out in ORCP 23 C

. . . [and] the amendment need not comply with the second and third conditions set out

in ORCP 23 C to relate back." *Id.* (citing *Harmon*, 933 P.2d at 365).

      Although Oregon courts have discussed the difference between misidentifications and

misnomers, they have not specifically addressed on which end of the spectrum naming a Doe

defendant falls, and courts in this district have reached different conclusions.

      In *Hagen v. Williams*, for example, the court determined that where a plaintiff

"intentionally [chooses] to name John [or Jane] Doe Defendants[,]" the case automatically is one

of misidentification because it requires "a change in parties." No. 6:14-cv-00165-MC, 2014 WL

6893708, at *7 (D. Or. Dec. 4, 2014). Conversely, in *Korbe v. Hilton Hotels Corp.*, the court

found that where the original complaint described the Doe defendant and his alleged conduct in

considerable detail, the case was one of misnomer because if he had "been served with the

original complaint, he would have understood that he was the intended defendant,

notwithstanding the fact that the complaint identified him as John Doe." No. 3:08-cv-1309-PK,

2009 WL 723348, at *7 (D. Or. Mar. 13, 2009); *see also Finicum*, 2021 WL 3502462, at *8

(describing the different approaches of courts in this district and collecting cases).

      In *Fudge*, this Court dismissed the plaintiff's claims against the Doe defendants because

the plaintiff had not met his burden of establishing that his proposed amendments related back to

his original complaint where the plaintiff "did not plead sufficient details about the forty-one

Doe defendants to put the proposed defendants on notice that they were the intended

defendants." *Fudge*, 2021 WL 1414279, at *4; *see also id.* at *3 ("Whereas a plaintiff could

allege sufficiently *specific facts* in a complaint to put a Doe defendant on actual or constructive

notice that the plaintiff is referring to them, here [the plaintiff's] original complaint included no

specific factual allegations that could have plausibly alerted the proposed defendants that [the plaintiff] intended to name them as defendants in this action.") (emphasis added).

In contrast to *Fudge*, the Court finds that Roe's original complaint contains a sufficient level of specificity to put John Does I to III on notice that they were Roe's intended defendants. In his original complaint, Roe alleges that "[m]ultiple other officers jumped on him, *including Doe Defendants*, striking him with their batons," and that "a male officer asked whether they were going to arrest him, but [Flohr] stated that they were going to beat him where he was." (Compl. ¶ 8, emphasis added.) Thus, any PPB officer who took down Roe and struck him with a baton that evening should have understood that they were an intended defendant.[5] Accordingly, the Court concludes that Roe's initial complaint is one of "misnomer" because Roe alleged sufficiently specific facts surrounding the takedown and use of force by the Doe Defendants to put them on constructive notice that they were the intended defendants in this action. *Cf. Manns*, 2018 WL 7078672, at *5 (concluding that the naming of Doe defendants was a case of "misidentification" in part because "the original complaint fails to describe any Doe defendant with sufficient specificity such that [the defendant] would have understood that he was indeed the defendant, notwithstanding the 'Doe' designation").

For these reasons, the Court finds that ORCP 23C's requirements are satisfied here, and the Court therefore denies Defendants' motion to dismiss Roe's claims against John Does I to III arising from the August 14, 2020, events. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("If the identity of any defendant is unknown, 'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not

---

[5] Defendants acknowledge that other officers completed Force Data Collection Reports from August 14, 2020, in addition to Flohr's Force Data Collection Report submitted in support of their motion. (*See* Turco Decl. ¶ 3.)

uncover the identities, or that the complaint would be dismissed on other grounds.'") (citations omitted).

## II.    FAILURE TO STATE A CLAIM

Defendants argue that Roe has failed to state a *Monell*, malicious prosecution, or retaliation claim. (Defs.' Mot. at 1, 6-15.)

### A.    *Monell* Claim

Defendants argue that Roe has failed to state a *Monell* claim against the City and, accordingly, the Court should dismiss count two. (*Id.* at 6-9.) The Court agrees.

#### 1.    Applicable Law

To state a Section 1983 claim against a local government entity under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a plaintiff must allege that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

///

The Ninth Circuit has noted that it historically did "not require[] parties to provide much detail at the pleading stage regarding such a policy or custom" to state a *Monell* claim. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). However, under the current pleading standards, a plaintiff "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Further, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

### 2.    Analysis

Roe alleges that Flohr and the Doe Defendants "acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the City to allow officers to use disproportional force against peaceful protesters." (Am. Compl. ¶ 27.) Roe further alleges that the City "failed to adequately supervise or train its employees with respect to the Fourth Amendment rights of peaceful protesters such as [Roe]" through "the City's failure to investigate and discipline officers for Fourth Amendment violations," amounting to deliberate indifference to Roe's rights. (*Id.* ¶ 28.) Roe alleges that Portland Mayor Ted Wheeler oversaw the PPB, had final policymaking authority for the City, and failed to act in light of the "routine use of excessive force[.]" (*Id.* ¶ 29.) As a result, officers "unlawfully used force" against Roe and caused him bodily harm, physical pain, and emotional distress. (*Id.* ¶¶ 30-31.)

Defendants argue that Roe's allegations are conclusory, merely restate the elements of a *Monell* claim, and do not provide Defendants with fair notice of the allegations against the City. (Defs.' Mot. at 6-9.) Roe responds that he has adequately stated a *Monell* claim and that the City's policy, practice, or custom of allowing officers to use disproportional force against

peaceful protesters has been the subject of multiple lawsuits, and Defendants cannot credibly argue that the City is unaware of the practices or customs underlying this suit. (Pl.'s Resp. at 9-11.)

Roe alleges in the complaint that he suffered a constitutional violation: excessive force in violation of the Fourth Amendment. (Am. Compl. at 4-6.) Defendants do not dispute, in their motion for judgment on the pleadings, that Flohr's alleged actions could have constituted a violation of Roe's constitutional rights. *See Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 934 (S.D. Cal. 2022) ("The County does not dispute, at least for purposes of its Motion to Dismiss, that the actions of a . . . Deputy could have constituted a violation of Plaintiff's constitutional rights."). The Court therefore concludes that the complaint sufficiently alleges the first element of a *Monell* claim.

However, the Court concludes that Roe does not allege sufficient underlying facts to support the remaining three elements of a *Monell* claim.[6] *See id.* at 936 ("Absent the allegations of her own isolated experience, Plaintiff alleges—at most—that the County 'appears' to have an unconstitutional custom or practice. This is just a bare legal conclusion, however, and is insufficient to establish a plausible claim for *Monell* liability based on an unofficial custom or practice.") (citation omitted); *Mora v. City of Chula Vista*, No. 20-cv-779-GPC(AGS), 2021 WL 4220633, at *4 (S.D. Cal. Sept. 16, 2021) (dismissing the plaintiff's *Monell* claim alleging that the defendant police officers "were trained . . . to respond with force, which they did not hesitate to do in this particular situation"); *Brown v. Cnty. of San Bernardino*, No. EDCV 20-1304 JGB

---

[6] To the extent Defendants argue that Roe must select between a policy, practice, or custom and only allege one in the complaint, the Court disagrees. (*See* Defs.' Mot. at 7, suggesting that the allegations are deficient because the complaint states that "the City had a policy or a practice or a custom"); *see Gordon*, 6 F.4th at 974 ("Here, plaintiff's *Monell* claim is premised on the County's alleged policies, customs, or practices.").

(SHKx), 2021 WL 99722, at *4 (C.D. Cal. Jan. 8, 2021) ("Courts have repeatedly rejected

sweeping allegations of policies and customs in the absence of facts supporting their existence

and applicability.") (collecting cases); *A.B. v. City of Santa Ana*, No. SA CV 18-1553-DOC

(ADS), 2019 WL 1578380, at *4 (C.D. Cal. Feb. 11, 2019) ("Plaintiff[']s 'bare assertion' that

Defendants have an ongoing unlawful policy or practice, without more, does not suffice to state a

claim for relief.") (citation omitted); *Est. of Adomako v. City of Fremont*, No. 17-cv-06386-

DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) (dismissing the plaintiff's *Monell*

claim where "the FAC alleges only facts specific to [the decedent]'s shooting" and explaining

that "[a]lthough the FAC adds the allegation that [the defendant] has a policy of '[s]hooting

unarmed individuals and then justifying the shooting by alleging that the suspect was violent

and/or reaching for the officers' weapon,' the FAC contains no factual allegations to support the

existence of a practice or custom beyond the incident involving [the decedent]"); *Gregory v. City

of Newberg*, No. 3:15-cv-00473-BR, 2015 WL 5577755, at *9-10 (D. Or. Sept. 21, 2015)

(granting the defendants' motion for judgment on the pleadings with respect to the plaintiff's

*Monell* claim where the plaintiff alleged that the "Chief of Police was the final policymaker for

City of Newberg as to officer conduct and he knowingly ratified and approved of deputies[']

excessive force without reasonable suspicion or probable cause that a crime had been committed

or a danger existed" and "[i]n the alternative, there exists a custom, unwritten policy or practice

to use excessive force on citizens based on prior tort claims and actions against . . . Newberg

officers").

       The Court therefore grants Defendants' motion for judgment on the pleadings with leave

to amend to plead additional facts in support of the *Monell* claim. *See Mueller v. Cruz*, No. 13-

cv-01274-CJC-JCGX, 2015 WL 9455565, at *1 (C.D. Cal. Dec. 23, 2015) (granting the

defendants' motion for judgment on the pleadings on the plaintiff's *Monell* claim with leave to amend); *Gregory*, 2015 WL 5577755, at *10 (same).

### B.    Malicious Prosecution Claim

Defendants argue that Roe has failed to state a claim for malicious prosecution against Flohr because a criminal proceeding was never initiated and because Roe has not sufficiently alleged that Roe's prosecution lacked probable cause. (Defs.' Mot. at 9-14.) In support, Defendants request that the Court take judicial notice of various exhibits. (*Id.* at 4, 11-13.)

#### 1.    Judicial Notice

Defendants ask the Court to take judicial notice of documents from state and federal court criminal cases, a police report, and videos of Roe's interaction with police on August 14, 2020. (*Id.* at 4, 11.) Roe responds that Defendants improperly rely on documents and exhibits beyond the complaint. (Pl.'s Resp. at 6-7.)

##### a.    Applicable Law

The general rule is that a court may not consider material outside the pleadings when considering a motion for judgment on the pleadings. *See Xcentric Ventures, L.L.C. v. Borodkin*, 934 F. Supp. 2d 1125, 1134 (D. Ariz. 2013) (so explaining), *aff'd*, 798 F.3d 1201 (9th Cir. 2015) (per curiam). However, a court may consider certain materials—"documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"—without converting a motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

"A court may take judicial notice of undisputed matters of public record, which may include court records . . . ." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) (citations omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining that a court may take judicial notice "of court filings and other

matters of public record"). "While matters of public record, such as prior court proceedings, are

proper subjects of judicial notice, the court may take notice only of the authenticity and existence

of a particular order or pleading, not the veracity or validity of its contents." *Xcentric Ventures,*

*L.L.C.*, 934 F. Supp. 2d at 1134 (citing, *inter alia*, *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir.

2001)); *see also Esparza v. Kohl's, Inc.*, No. 23-cv-01988-AJB-KSC, 2024 WL 1152732, at *2

(S.D. Cal. Mar. 18, 2024) (same). Further, judicial notice is limited to those facts that are "not

subject to reasonable dispute." FED. R. EVID. 201(b).

    "When parties dispute the facts contained in a police report, courts within the Ninth

Circuit will generally decline to take judicial notice." *Redick v. Lowe's Home Centers, LLC*, No.

1:21-cv-0979-SAB, 2021 WL 3207250, at *6 (E.D. Cal. July 29, 2021) (citing *Zuccaro v.*

*Martinez Unified Sch. Dist.*, No. 16-cv-02709-EDL, 2016 WL 10807692, at *5 (N.D. Cal. Sept.

27, 2016)); *see also Ritchie*, 342 F.3d at 909 (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir.

1985) for its holding that the existence and content of a police report are not properly the subject

of judicial notice); *Benavides v. City of Arvin*, No. 12-cv-0405, 2012 WL 1910259, at *3 (E.D.

Cal. May 25, 2012) (declining to take judicial notice of a police report).

    A court may also consider materials incorporated by reference in the complaint. In *Khoja*

*v. Orexigen Therapeutics, Inc.*, the Ninth Circuit "clarif[ied] when it is proper [for a court] to . . .

incorporate by reference documents into a [plaintiff's] complaint, and when it is not." *Khoja v.*

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The incorporation-by-reference

doctrine is a judicial creation that "treats certain documents as though they are part of the

complaint itself" and "prevents plaintiffs from selecting only portions of documents that support

their claims, while omitting portions of those very documents that weaken—or doom—their

claims." *Id.* at 1002 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded*

*by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006)). The Ninth Circuit has recognized that "a defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *Ritchie*, 342 F.3d at 907). With respect to the extensiveness of the complaint's references, the Ninth Circuit has "held that 'the mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Id.* (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

### b.    Analysis

Defendants request that the Court take judicial notice of court documents as matters of public record. (Defs.' Mot. at 4.) The Court concludes that it may properly take judicial notice of Exhibits 3 through 8 because those court dockets and records are appropriate matters of judicial notice. (Decl. Caroline Turco Supp. Defs.' Mot. ("Turco Decl.") Exs. 3-8, ECF No. 52); *see Raygoza-Garcia*, 902 F.3d at 1001 (explaining that courts may take judicial notice of undisputed matters of public record such as court documents).

Defendants also request that the Court take judicial notice of a police report and videos because (1) they are matters of public record, (2) Roe incorporated them by reference in his complaint, or (3) the video is central to the claims raised in the complaint. (Defs.' Mot. at 4; Turco Decl. Exs. 1-2.) The Court first concludes that the police report is not a proper subject for judicial notice as a matter of public record. *See Lua v. McNett*, No. 23-cv-32-JAH-BLM, 2023 WL 6798503, at *3 (S.D. Cal. Oct. 12, 2023) (taking judicial notice of a criminal complaint and guilty plea documentation but declining to take judicial notice of a police report); *Redick*, 2021 WL 3207250, at *6-7 (taking judicial notice of state court documents related to the plaintiff's malicious prosecution claim but declining to take judicial notice of a police report); *Berry v.*

*Reno Police Dep't*, No. 3:18-cv-00558-MMD-WGC, 2020 WL 809374, at *4 (D. Nev. Feb. 18, 2020) (declining to take judicial notice of the contents of police reports); *Benavides*, 2012 WL 1910259, at *3 (same). The Court also concludes that Roe does not refer extensively to the police report in his complaint nor rely on it to such an extent that the Court should consider the report as part of the complaint itself. (*See* Am. Compl. ¶¶ 12, 44); *see Coto Settlement*, 593 F.3d at 1038 (explaining that "the mere mention of the existence of a document is insufficient to incorporate the contents of a document").

The Court further concludes that the video footage of the relevant events is an inappropriate matter of judicial notice. *See Rubio v. City of Visalia*, No. 1:21-cv-00286-SAB, 2024 WL 919452, at *5 (E.D. Cal. Mar. 1, 2024) ("The Court declines to take judicial notice of the footage as it is not appropriate to do so. The body worn camera footage is not attached to Plaintiff's complaint and Plaintiff makes no argument that the footage forms the basis of the complaint such that it is incorporated by reference.") (citations omitted); *Sanz v. City of Vallejo*, No. 2:19-cv-02134-TLN-DB, 2021 WL 2682162, at *4 (E.D. Cal. June 30, 2021) (declining to incorporate by reference body worn footage because the plaintiff did not refer to the video footage extensively in the complaint and the video footage did not form the basis of the plaintiff's claims); *Turner v. Byer*, No. 2:17-cv-1869-EFB P, 2020 WL 5518401, at *1 (E.D. Cal. Sept. 14, 2020) (declining to take judicial notice of a video "which depicts part of the altercation between defendant and plaintiff underlying the excessive force claims at issue"), *findings and recommendation adopted*, 2020 WL 6582267 (E.D. Cal. Nov. 10, 2020); *Lee v. City of San Diego*, No. 18-cv-0159 W (BLM), 2019 WL 117775, at *4-5 (S.D. Cal. Jan. 7, 2019) (declining to consider police body camera footage on a Rule 12(c) motion under the incorporation-by-reference doctrine where the plaintiff's complaint did not refer to videos and the plaintiff's

claims were not based on the videos); *Knickerbocker v. United States*, No. 1:16-cv-01811-DAD-JLT, 2018 WL 836307, at *5 (E.D. Cal. Feb. 12, 2018) ("The government does not merely wish the court to take judicial notice of the fact that these videos exist: it requests the court take judicial notice of the contents of the video to purportedly show that the defendant rangers did not employ excessive force. This obviously is disputed by plaintiff, and is far beyond the usual purposes of judicial notice.").

Accordingly, the Court declines to take judicial notice of Exhibit 1 (the police report) and Exhibits 2a and 2b (the videos). (*See* Turco Decl. Exs. 1-2.)

### 2.    Malicious Prosecution

#### a.    Applicable Law

"A claim of malicious prosecution under § 1983 requires pleading tortious conduct by the defendant under the elements of a state law malicious prosecution claim, as well as alleging that the defendant acted under color of state law and for the purpose of denying the plaintiff a specific constitutional right." *Fratzke v. Mont. Fish, Wildlife, & Parks*, 716 F. App'x 687, 688 (9th Cir. 2018) (citing *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998)); *see also Fabbrini v. City of Dunsmuir*, 631 F.3d 1299, 1301 n.1 (9th Cir. 2011) ("We are assuming, as did the parties, that a § 1983 malicious prosecution must meet the requirements of a malicious prosecution case in the forum state.") (citations omitted).

In Oregon, the elements of malicious prosecution are: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result." *Mouktabis v. Clackamas Cnty.*, 536 P.3d 1037, 777 (Or. Ct. App. 2023) (quoting *Miller v. Columbia Cnty.*, 385 P.3d 1214, 1223 (Or. Ct. App. 2016)).

Under the first prong, "where 'the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held[.]'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012) (en banc) (quoting RESTATEMENT (SECOND) OF TORTS § 654 cmt. e)."'If there is nothing more than the false arrest and the accused is released without any further proceeding,' the remedy is limited to damages for the false arrest." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 654 cmt. e); *see also* RESTATEMENT (SECOND) OF TORTS § 654 ("Criminal proceedings are instituted when (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or (b) without the issuance of process an indictment is returned or an information filed against him; or (c) he is lawfully arrested on a criminal charge.").

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

### b.    Analysis

Defendants argue that judgment should enter on Roe's malicious prosecution claim because criminal proceedings were never instituted against Roe. (Defs.' Mot. at 11.) Roe responds that questions of fact remain with respect to the institution of criminal proceedings. (Pl.'s Resp. at 6-7, 11-15.)

Roe alleges that he was "charged with Assaulting a Public Safety Officer, Interfering with Peace/Parole and Probation Officer, Disorderly Conduct in the Second Degree, and Resisting Arrest." (Am. Compl. ¶ 12.) Roe further alleges that the charges were later dismissed

with a "no complaint" disposition. (*Id.* ¶ 13.) The Court takes judicial notice of the docket of

Roe's state court case, which reveals that following Roe's August 14, 2020, arrest, his scheduled

August 17, 2020, arraignment was canceled, and he was released on his own recognizance.

(Turco Decl. Ex. 3.) On October 19, 2020, the Multnomah County Circuit Court entered a "no

complaint" disposition on all charges against Roe, and his case was closed that day. (*Id.*)

Roe acknowledges that no complaint was ever filed against him. Further, he has not pled

that he ever appeared in court following his arrest. Accordingly, the Court concludes that Roe's

allegations sound in false arrest, not malicious prosecution. As a result, the Court dismisses

Roe's malicious prosecution claim with leave to amend. *See Lacey*, 693 F.3d at 920 ("Although

[the plaintiffs] were arrested, they have not alleged that any process resulting in the initiation of

criminal proceedings followed this arrest. Accordingly, [the plaintiff] has not identified any

action taken by [the defendant] that can properly be characterized as a prosecution. He has

simply recast the false arrest claim as a claim for malicious prosecution, which he may not do.

The district court properly dismissed the malicious prosecution claims."); *see also Fleming v.

Las Vegas Metro. Police Dep't*, No. 2:23-cv-00177-RFB-EJY, 2023 WL 6392612, at *10-11 (D.

Nev. Sept. 30, 2023) (granting the defendants' motion to dismiss where the plaintiff had alleged

that he was arrested, detained for several hours, released, assigned a criminal case number, and

the state subsequently declined to bring formal charges against him because he did not "allege

information about how any criminal proceedings were actually instituted against him"); *Harmon

v. City of Pocatello*, 431 F. Supp. 3d 1135, 1153 (D. Idaho 2020) (concluding that the plaintiff's

"claim of malicious prosecution fails because she was never prosecuted" where "[n]o citation

was issued, and no charges were ever filed"), *aff'd*, 854 F. App'x 850 (9th Cir. 2021).

///

PAGE 25 – OPINION AND ORDER

### C.    Retaliation Claim

Defendants argue that Roe has failed to state a claim for First Amendment retaliation because Roe has not pled an absence of probable cause and because probable cause existed for Roe's arrest. (Defs.' Mot. at 14-15.)

### 1.    Applicable Law

A retaliation claim under Section 1983 requires a plaintiff to plead that "(1) [the plaintiff] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citations omitted). A plaintiff must also plead the absence of probable cause for a retaliatory arrest claim. *See Nieves v. Bartlett*, 587 U.S. 391, 404 (2019). "[I]f the plaintiff establishes the absence of probable cause, 'then . . . [t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation." *Id.* (simplified).

"Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924-25 (9th Cir. 2001) (quoting *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995)). "Even if the officers were mistaken that probable cause to arrest existed, they are nonetheless immune from liability if their mistake was reasonable." *Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010) (simplified).

///

PAGE 26 – OPINION AND ORDER

2.    **Analysis**

Defendants argue that Roe cannot establish that there was no probable cause for his arrest and prosecution. (Defs.' Mot. at 11-14.) Roe responds that he has adequately pled that Defendants lacked probable cause for his arrest, and he argues that he has alleged a claim for both retaliatory arrest and retaliatory assault. (Pl.'s Resp. at 17-18.)

Roe alleges that he was marching in a peaceful protest, and when police blocked the protesters' path, he stood playing drums. (Am. Compl. ¶ 11.) In response, the police shot smoke grenades, ran full speed at the group of protestors, knocked people down, swung nightsticks, and body checked protesters. (*Id.*) Flohr struck Roe and pulled him to the ground by his face mask/respirator, instructed other officers to beat Roe, and subsequently arrested him. (*Id.*) On the face of the pleadings, Roe has sufficiently alleged that Flohr lacked probable cause to arrest him.

Defendants ask the Court to look beyond the pleadings but, for the reasons explained, the Court declines to take judicial notice of the police report and videos, which Defendants argue show that Roe was the aggressor and assaulted Flohr. (Defs.' Mot. at 12.)

Defendants also argue that the Court should consider, as a matter of judicial notice, Roe's subsequent federal indictment for civil disorder as proof that probable cause existed for his arrest for assaulting a public safety officer, interfering with a peace, parole, and probation officer, disorderly conduct in the second degree, and resisting arrest. (*Id.* at 13-14.) However, although the Court takes judicial notice of the federal docket attached as Exhibit 7, the Court declines to review the substance of the documents in the docket to evaluate whether the probable cause finding in support of the federal crime is determinative of probable cause for all of the state crimes of arrest. *See Xcentric Ventures, L.L.C.*, 934 F. Supp. 2d at 1135 ("For purposes of a motion for judgment on the pleadings, the Court takes the allegations of the complaint as true and determines whether those allegations would show a lack of probable cause."); *cf. Ogbonnaya*

*v. City of Mesa*, No. 2:14-cv-1544-HRH, 2015 WL 241444, at *6 (D. Ariz. Jan. 20, 2015)

(noting that probable cause could be a defense to malicious prosecution where the "[p]laintiff has

alleged that he was indicted by a grand jury" but ultimately concluding that the plaintiff's

allegations rebutted the presumption of probable cause).

The Court concludes that Roe has sufficiently alleged that Flohr lacked probable cause

for his arrest. *See Powelson v. Sausalito Police Dep't*, No. 23-cv-01360-EMC, 2023 WL

7392289, at *11 (N.D. Cal. Nov. 8, 2023) ("The Court does not dismiss Count 8 because there is

at least a question of fact as to whether the police had probable cause to arrest [the plaintiff.]").

Accordingly, the Court denies Defendants' motion for judgment on the pleadings on Roe's

retaliation claim.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART

Defendants' motion for judgment on the pleadings (ECF No. 48), as follows: (1) the Court

dismisses Roe's claims arising from the events of August 9, 2020, and John Does IV and V, with

prejudice; (2) the Court dismisses Roe's *Monell* and malicious prosecution claims with leave to

amend; and (3) the Court denies Defendants' motion for judgment on the pleadings with respect

to Roe's claims against John Does I to III arising from the events of August 14, 2020, and Roe's

retaliation claim. Roe may file a second amended complaint within thirty days.

**IT IS SO ORDERED.**

DATED this 19th day of August, 2024.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge