**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**RICHARD ROE**,

Plaintiff,

v.

**THE CITY OF PORTLAND; AMELIA FLOHR; JOSHUA DYK;** and **ALEXANDRA ROSS,**

Defendants.

Case No. 3:22-cv-01193-SB

**SECOND AMENDED COMPLAINT**
(§1983 claims: Fourth Amendment excessive force; First Amendment retaliation; malicious prosecution)

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff brings this action to remedy violations of Plaintiff's constitutional and statutory rights under Fourth, First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. Plaintiff seeks compensatory damages, as well as his attorneys' fees and costs.

## JURISDICTION

2. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

## VENUE

3. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred in Portland, Multnomah County, Oregon.

## PARTIES

4. Plaintiff is a resident of Oregon. Plaintiff has been subjected to retaliation, stalking, death threats and abuse and therefore proceeds under the pseudonym Richard Roe.

5. Defendant Amelia Flohr is a Portland Police Bureau (PPB) Officer and was at the time of the events alleged herein a member of the Rapid Response Team (RRT). Flohr at all times material acted under color of law and is sued in her individual capacity. Plaintiff did not learn of Flohr's identity, and could not have known of her true identity, because the identity of the author of the report was initially redacted as "AV1." After Plaintiff received discovery from the United States in a criminal matter, he later learned that it was Flohr. This did not occur until approximately January 2021.

6. Defendant Joshua Dyk is a PPB Officer and member of the RRT. Dyk at all times material acted under color of law and is sued in her individual capacity.

7. Defendant Alexandra Ross is a PPB Officer and member of the RRT. Ross at all times material acted under color of law and is sued in her individual capacity.

8. Defendant City of Portland ("the City") is and at all material times hereto has been a municipal corporation in the State of Oregon. The PPB is the law enforcement agency of the City and the RRT is group within PPB. As a local governmental entity, the City is a person under 42 U.S.C. § 1983. At all material times, the City employed Defendants Flohr, Dyk and Ross.

**FACTS**

9. On August 9, 2020, Plaintiff was marching in a peaceful protest in northeast Portland, Oregon. After Portland Police officers directed protesters to disburse, a group of protesters, including plaintiff, moved in the direction officers directed. While complying with orders and moving as directed, Portland Police repeatedly struck plaintiff from behind with a nightstick, deployed flashbangs his feet, and fired so-called "non-lethal" munitions at plaintiff. An RRT officer hit Plaintiff approximately three times with projectiles.

10. Upon reaching Kenton Park, Portland Police engaged in a tactical maneuver, commonly known as "kettling," by surrounding protesters from three sides and rapidly charging. During this maneuver, plaintiff was body-checked with a nightstick from behind (as he was moving in the direction the officers had ordered) by an RRT officer from a running speed. This caused plaintiff to fly forward with both feet lifted off the ground, landing on the field drum he had strapped to his person. After rising to his feet and continuing in the direction officers ordered, another officer snuck up on plaintiff from behind and stole his pair of drumsticks.

11. After attacking plaintiff and causing injuries to him, the Portland police officers made no attempt to arrest, restrain, or detain plaintiff.

12. On August 14, 2020, Plaintiff was marching in a peaceful protest in northeast Portland, Oregon, when the police fired flashbang grenades which directed the protesters to a

blockade of PPB officers. When confronted with the police blocking their way, the protesters including plaintiff remained in place. Plaintiff was standing playing drums just behind a line of protesters. Plaintiff did not act in a menacing or hostile manner.

13. After an interval, the police shot smoke grenades at the feet of the front line of protesters and then into the midst of the group of protesters. Then the Portland Police officers ran at full speed and hurtled themselves into the protesters, knocking people to the ground, swinging their batons at protesters and body checking protesters with their batons. Plaintiff was struck by Flohr and pulled to the ground by his face mask/respirator. At no point did Plaintiff strike or attempt to strike any officer. Multiple other officers jumped on him, including Defendants Dyk and Ross, striking him with their batons. A male officer asked whether they were going to arrest him, but Flohr stated they were going to beat him where he was. This caused extreme fear in Plaintiff. Plaintiff attempted to flee but was violently grabbed, beaten, punched and thrown to the ground by Defendants Flohr, Ross and Dyk. Each officer was acting within the course and scope of his or her employment. Plaintiff was then arrested despite having committed no crime and taken to Inverness Jail.

14. Plaintiff was subsequently charged with Assaulting a Public Safety Officer, Interfering with Peace/Parole and Probation Officer, Disorderly Conduct in the Second Degree, and Resisting Arrest. These charges were based upon the police report and statements made by Flohr, which she knew to be false at the time she made them. All of these criminal charges are based on knowingly false testimony by the arresting officers. As a result of the aforementioned assaults, both Plaintiff suffered injuries to his wrists, arms, legs, and torso.

15. On October 19, 2020, the criminal charges based upon the knowingly false statements of Flohr were later dismissed by Multnomah County District Attorney (the disposition is noted as "no complaint").

**COUNT I**

**(42 U.S.C. § 1983)**

**(Fourth Amendment – Excessive Force)**

**(Against Defendants Flohr, Dyk, and Ross)**

16. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

17. Plaintiff has a right to be free from unreasonable force as guaranteed by the Fourth Amendment to the United States Constitution.

18. Defendants Flohr, Dyk and Ross's intentional use of physical force constituted a seizure under the Fourth Amendment.

19. As alleged above, Defendants Flohr, Dyk and Ross violated Plaintiff's right to be free from undue and unreasonable force. Defendants Flohr, Dyk and Ross's use of force was objectively unreasonable under the circumstances, unjustifiable, and constituted unlawful seizure and excessive force.

20. Plaintiff did not commit any crimes, pose any threat to any officers or any other person, or resist arrest. On August 14, 2020, when Plaintiff was hit and tackled, he was peacefully protesting and did not pose a threat to anyone. Nothing about his demeanor or actions or the circumstances of these assaults warranted the use of force or his arrest.

21. Defendants Flohr, Dyk and Ross's seizures of Plaintiff were objectively unreasonable. Using projectiles, flash bang grenades, riot batons and physical force against

parties who are not engaged in criminal activity and pose no threat to anyone's safety is an unconstitutionally excessive use of force.

22. Defendants Flohr, Dyk and Ross while acting under color of law deprived Plaintiff of his Fourth Amendment rights.

23. At all material times, the law was clearly established that Defendants Flohr, Dyk and Ross's uses of force, in the manner and under the circumstances used against Plaintiff, who was nonviolent and attempting to comply, were objectively unreasonable, and any reasonable law enforcement officer would have known that the force used against Plaintiff was unreasonable and violated his clearly established Fourth Amendment rights.

24. Plaintiff reasonably fears further retaliation in the future in violation of the Fourth Amendment if he continues to participate in constitutionally protected activity.

25. Defendants Flohr, Dyk and Ross's conduct caused Plaintiff bodily harm, physical pain, and emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

26. Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants Flohr, Dyk and Ross's should be assessed punitive damages in an amount as fixed by a jury to punish him and to deter such conduct in the future.

27. Plaintiffs are entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT II**

**(42 U.S.C. § 1983)**

**(Fourth Amendment – Excessive Force)**

**(Against the City of Portland)**

28. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

29. Defendants Flohr, Dyk and Ross, acting under the color of state law, engaged in the unlawful use of excessive force against Plaintiff and other peaceful protesters during the August 14, 2020, protest in Portland, Oregon. These actions were taken pursuant to an expressly adopted official policy or a widespread and longstanding practice or custom of the City of Portland to allow, encourage, or fail to prevent the use of excessive force by PPB officers against individuals exercising their First Amendment rights during protests.

30. The City of Portland, through its policymakers and leadership, including Mayor Ted Wheeler, knew or reasonably should have known that PPB officers were regularly engaging in the disproportionate and excessive use of force against peaceful protesters throughout the summer of 2020, including, but not limited to, the protest on August 9 and August 14, 2020. Despite repeated instances of officers using impact munitions, tear gas, and other forms of violent crowd control tactics against peaceful protesters, the City tacitly and explicitly authorized and condoned this unlawful behavior. Numerous videos of protests that were widely available on internet news sites and social media, and shown on television, showed officers using batons and takedowns of the kind used here, indiscriminately and without probable cause against protesters that were either passively resisting or complying with police directives. Videos showing members of the very team in question here—RRT—showed a culture and practice of using excessive force of the kind described here against protesters. This included pushing people from bicycles, trampling, throwing, and pushing protesters to the ground, hitting and using batons to hit protesters in the head or neck, using the batons to body check people to the ground, and stomping on protesters. Numerous victims of these acts reported this conduct to the City.

31. The City has permitted the use of crowd control methods that violate the Fourth Amendment's protections against unreasonable seizures, especially in situations involving

peaceful demonstrations. This includes, but is not limited to, using the following force on protesters that are passively resisting or complying with police directives:

a. shooting them with projectiles,

b. hitting them with batons,

c. shoving them onto the ground,

d. shoving them with batons,

e. hitting and shoving them with the stocks of guns,

f. using chemical agents on entire crowds, and

g. pulling peoples' masks off to expose them to chemical agents.

32. All of these activities were routinely deployed during the protests from May 2020 up until the protests on August 14, 2020. Each of these protests, including the one on August 14, 2020, was attended by high-ranking officers within the PPB who observed the RRT officers' conduct firsthand. The undertook no meaningful efforts to curb or deter this conduct, effectively condoning and encouraging it.

33. The City of Portland failed to adequately supervise, train, and discipline its officers, including Flohr, Ross and Dyk, with respect to the constitutional rights of protesters. Specifically, the City did not take appropriate action to prevent or address excessive force incidents, including the following:

- A failure to properly train officers on de-escalation tactics, and the appropriate and lawful use of force in response to non-violent protests.

- A failure to investigate numerous documented instances of excessive force during protests in Portland in 2020, leading to a pattern of constitutional violations.

- A failure to discipline officers involved in using force against protesters, which amounts to deliberate indifference to the Fourth Amendment rights of individuals, including Plaintiff, who were subjected to unreasonable force during the August 14, 2020 protest. Those officers that were disciplined received such slight or anemic discipline that it did not deter officers from engaging in excessive force. By way of example, an officer who shot a protester who had done absolutely nothing received a one-day suspension.

34. The training received by members of the RRT portrayed protesters as a menace to deal with violence. For example, in 2018, the training materials on "Protests and Riots" contained the following image:




35. This slide from that presentation, and others, trained and encouraged the members of the RRT to view protesters as the enemy to whom they were entitled to use indiscriminate and illegal force. The officer who prepared the training materials, and included these slides (which

were in use unchanged from 2015 to 2018) was Jeff McDaniel, himself the subject of multiple lawsuits including one for pepper spraying protesters at City Hall.

36. Mayor Ted Wheeler, in his capacity as the final policymaker for the City of Portland and PPB, was aware of the routine use of excessive force by PPB officers during the summer protests, including the specific tactics employed on August 14, 2020. His failure, and the failure of those under his command and supervision, to act in the face of widespread constitutional violations amounted to ratification of the conduct of defendants Flohr, Dyk and Ross.

37. The City of Portland, acting pursuant to this policy, custom, or practice of using excessive force against protesters, unlawfully caused the violation of Plaintiff's Fourth Amendment rights. Specifically, Plaintiff was subjected to physical harm and emotional distress when PPB officers, under the direction and control of the City, used excessive force without justification against peaceful demonstrators.

38. As a direct and proximate result of Defendants' conduct, Plaintiff suffered bodily harm, physical pain, and emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

39. Defendants' actions were willful, malicious, and carried out with reckless indifference to Plaintiff's constitutional rights. Plaintiff seeks punitive damages to punish Defendants and to deter similar unlawful conduct in the future.

40. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III**

**(42 U.S.C. § 1983)**

**(First Amendment Retaliation)**

**(Against Defendant Flohr, Dyk and Ross)**

41. Plaintiff realleges and incorporates by reference the above paragraphs.

42. The First Amendment to the United States Constitution protects persons from unlawful curtailment of expressive conduct, assembly, and association.

43. Plaintiff was engaged in constitutionally protected acts of free speech.

44. By targeting and using force against Plaintiff, Defendants Flohr, Dyk, and Ross chilled his political speech and violated his First Amendment rights.

45. Plaintiff reasonably fears further retaliation in the future in violation of the First Amendment if he continues to participate in constitutionally protected activity.

46. Defendants Flohr, Dyk, and Ross's conduct caused Plaintiff bodily harm, physical pain, and emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

47. Defendants Flohr, Dyk, and Ross's acts were willful and malicious and done with reckless indifference to Plaintiffs' protected rights. Defendants Flohr, Dyk, and Ross should be assessed punitive damages in an amount as fixed by a jury to punish him and to deter such conduct in the future.

48. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT IV**

**(42 U.S.C. § 1983)**

**(False Arrest)**

**(Against Defendant Flohr, Dyk and Ross)**

49. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

50. On August 14, 2020, Defendants Flohr, Dyk, and Ross, acting under the color of state law and as officers with the PPB, unlawfully arrested Plaintiff without probable cause.

51. At the time of Plaintiff's arrest, Plaintiff was participating in a peaceful protest, engaging in constitutionally protected activity under the First Amendment. Despite the lack of any lawful justification, Defendants Flohr, Dyk, and Ross physically assaulted and arrested Plaintiff.

52. The arrest was made without a warrant, and there was no reasonable basis to believe Plaintiff had committed any crime. Defendant Flohr falsely alleged that Plaintiff assaulted a public safety officer and resisted arrest, knowing these accusations were untrue.

53. The charges against Plaintiff were subsequently dismissed, and no criminal complaint was filed against Plaintiff.

54. As a result of this unlawful seizure, Plaintiff was deprived of his right to be free from unreasonable seizure under the Fourth Amendment to the U.S. Constitution.

55. The conduct of Defendants Flohr, Dyk, and Ross directly caused Plaintiff to suffer loss of liberty, physical harm, emotional distress, and other damages.

56. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

57. Defendants Flohr, Dyk, and Ross's acts were willful, malicious, and done with reckless disregard for Plaintiff's rights. Plaintiff is entitled to punitive damages to deter such future conduct.

58. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment granting him:

a) A declaration that the acts and omissions described herein violated his rights under the U.S. Constitution;

b) An award of compensatory and First Amendment damages in a sum that is just as determined by a jury;

c) An award of punitive damages in a sum that is just as determined by a jury;

d) Plaintiff's costs and attorney fees in this suit, and

e) Any additional relief this court deems just, proper, and equitable.

**Plaintiff demands a trial by Jury.**

Dated: September 25, 2024

**Law Offices of Daniel Snyder**

*/s/ John Burgess*
John David Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 | Fax: (503) 241-2249
Of Attorneys for Plaintiff